IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PHILLIP ANDERSON,<br><br>               Plaintiff,<br><br>   v.<br><br>CITY OF PHILADELPHIA, et al.,<br><br>               Defendants. | CIVIL ACTION<br>NO. 11-4623 |

**OPINION**

Slomsky, J.                                                                                                       March 14, 2013

## I.    INTRODUCTION

Plaintiff Phillip Anderson initiated this civil rights lawsuit against Defendants City of Philadelphia, Philadelphia Police Commissioner Charles H. Ramsey, and Philadelphia Police Officers Adrian Ryan and Gerald Rahill based on events that took place during the early afternoon of June 22, 2010. Plaintiff claims to have been the victim of an unlawful search and seizure conducted by Officers Ryan and Rahill, which left him bruised, battered, and in need of costly medical care. According to Plaintiff, this encounter was racially motivated and consistent with racially discriminatory policies and practices of the Philadelphia Police Department.

Plaintiff filed a thirteen-count Complaint against the four Defendants[1] seeking declaratory and injunctive relief, $150,000 in compensatory damages on each count, and a minimum of $500,000 in punitive damages. Before trial, Plaintiff withdrew all claims against the City of Philadelphia and Police Commissioner Ramsey.

---

[1] The Complaint also named as Defendants three unknown Philadelphia Police Officers. (Doc. No. 1.) The other officers were never identified. Therefore, for purposes of this Opinion, the Court will only refer to Officers Ryan and Rahill.

1

At the conclusion of trial, the jury found against Plaintiff on the federal claim of use of excessive force and on the state law claim of assault and battery. The jury found in favor of Plaintiff on the Fourth Amendment claim of unreasonable seizure and on the state law claim of false arrest. The jury awarded him $1 in nominal damages.

As the prevailing party in a federal civil rights action, Plaintiff now moves for attorneys' fees pursuant to 42 U.S.C. § 1988 and for costs. For reasons that follow, the Court will deny Plaintiff's Motion for an Award of Attorney's Fees and Interest (Doc. No. 40) and will grant Plaintiff's request for costs (Doc. Nos. 39 and 51).

## II. FACTUAL AND PROCEDURAL BACKGROUND

On June 22, 2010, Plaintiff, a Hispanic male, was waiting for the mid-afternoon bus at the corner of 9th and Erie Streets in Philadelphia when he was suddenly struck by a Philadelphia Police patrol car being driven by Officers Adrian Ryan and Gerald Rahill. (Doc. No. 1 at 5-6.) After he was pinned against a wall with the car, Plaintiff claimed the officers beat him with their "night sticks and fists" without being provoked. (Id. at 6-7.) As he was lying helpless on the ground, they tazed him and sprayed mace in his eyes. (Id. at 7.) Plaintiff was then briefly detained at the scene, forced to sign a citation — which, he later learned, was for disorderly conduct — and purportedly left "humiliated, crying, bleeding and injured on the street." (Id. at 6.) On his own, Plaintiff went to Temple University Hospital for emergency medical treatment. (Id. at 8.) Once released from the hospital, Plaintiff reported the incident at the local police station and, ultimately, met with Internal Affairs, which is responsible for investigating citizen complaints of officer misconduct. (See id. at 8-10.) Internal Affairs never followed up with Plaintiff about whether an investigation was initiated and, if so, what was the outcome. (Id. at 10.)

Eventually, Plaintiff was provided with a copy of the citation prepared by Officers Ryan and Rahill, which contained a factual narrative that, according to Plaintiff, was vastly different from what he had experienced that afternoon. (Id. at 11.) First, the citation noted that Officers Ryan and Rahill were directed to 9th and Erie Streets based on a radio call informing them that a Hispanic male wearing a black shirt and blue shorts was standing on the corner with a knife to his own throat. (Id.) Second, the citation described the officers' initial encounter with Plaintiff as merely a question and answer session. (Id.) Third, the citation noted that Plaintiff had jumped on the roof of the patrol car, screaming and striking the windshield with his hands. (Id.)[2] When the officers attempted to detain him, he took a "fighting stance," which forced them to use pepper spray. (Id. at 11-12.) Finally, the citation stated that Plaintiff was transported by Officers Ryan and Rahill to Episcopal Hospital for medical treatment, instead of, as Plaintiff contended, that they left him bruised and battered on the street and forced to find his own medical care. (Id. at 12.)[3]

On July 22, 2011, Plaintiff filed the instant civil rights action against Defendants City of Philadelphia, Philadelphia Police Commissioner Charles H. Ramsey, and Philadelphia Police Officers Ryan and Rahill. (Id.) Plaintiff claimed that the illegal search and seizure and use of excessive force by Officers Ryan and Rahill, their subsequent fabrication of events and the lack of any internal investigation into his complaint, were consistent with the Philadelphia Police Department's long history of discriminatory policies and practices aimed at racial minorities in the City of Philadelphia. (See id. at 13-27.) The Complaint alleged the following violations:

---

[2] Officers Ryan and Rahill believed that, based on their experience, Plaintiff behaved like someone high on PCP (Phencyclidine). (Doc. No. 16 at 2.)

[3] This dueling version of events has been maintained throughout this litigation. (See Doc. Nos. 16, 17, 40-1, and 41.)

3

Count I — 42 U.S.C. § 1983, against all Defendants, for unreasonable search and seizure under the Fourth Amendment.

Count II — 42 U.S.C. § 1983, against all Defendants, for implementing and enforcing an unconstitutional racially-based search and seizure policy under the Fourteenth Amendment.

Count III — 42 U.S.C. § 1983, against Defendants City of Philadelphia and Police Commissioner Ramsey, for failure to properly train officers under the Fourth and Fourteenth Amendments.

Count IV — 42 U.S.C. § 2000(D) et seq., against Defendant City of Philadelphia, for discrimination based on race in law enforcement activities.

Count V — 42 U.S.C. § 1983, against Defendant City of Philadelphia and Police Commissioner Ramsey, for denial of due process and equal protection under the Fourteenth Amendment for failure to properly process Plaintiff's complaint filed with the police department.

Count VI — Assault and Battery, against Officer Ryan, for operating the patrol car.

Count VII — Assault and Battery, against Officer Ryan, for using excessive force.

Count VIII — Assault and Battery, against Officer Rahill, for operating the patrol car.

Count IX — Assault and Battery, against Officer Rahill, for using excessive force.

Count X — Conspiracy to Commit Assault and Battery, against Officers Ryan and Rahill, for operating the patrol car and using excessive force.

Count XI — False Arrest and False Imprisonment, against Officers Ryan and Rahill, for detaining Plaintiff.

Count XII — Intentional Infliction of Emotional Distress, against Officers Ryan and Rahill, for the unlawful search and seizure and use of excessive force.

>Count XIII — 42 U.S.C. § 1985, Conspiracy to Violate Constitutional Rights, against Police Commissioner Ramsey and Officers Ryan and Rahill.

(Id. at 27-43.)

Beginning on July 25, 2012, a three-day jury trial was held on Plaintiff's claims against Officers Ryan and Rahill.[4] The jury returned a verdict in favor of Plaintiff and against Officers Ryan and/or Rahill. The verdict questionnaire used by the jury shows the following findings:

>Do you find that the plaintiff has proven by a preponderance of the evidence that any defendant stopped him without reasonable suspicion on June 22, 2010, in violation of the Fourth Amendment?
>
>| | | |
>|---|---|---|
>| PO Adrian Ryan | YES √ | NO |
>| PO Gerald Rahill | YES √ | NO |
>
>Do you find that the plaintiff has proven by a preponderance of the evidence that any defendant arrested him without probable cause on June 22, 2010, in violation of the Fourth Amendment?
>
>| | | |
>|---|---|---|
>| PO Adrian Ryan | YES √ | NO |
>| PO Gerald Rahill | YES | NO √ |
>
>Do you find that the plaintiff has proven by a preponderance of the evidence that any defendant committed the intentional tort of false arrest against him on June 22, 2010?
>
>| | | |
>|---|---|---|
>| PO Adrian Ryan | YES √ | NO |
>| PO Gerald Rahill | YES | NO √ |

(Doc. No. 35 at 1-2.) On these claims, the jury awarded Plaintiff a total of $1 in nominal damages. (Id. at 4.) On August 7, 2012, Judgment was entered in accordance with the verdict of the jury. (Doc. No. 38.)[5]

---

[4] As noted previously, Plaintiff voluntarily withdrew all claims against Defendants City of Philadelphia and Police Commissioner Ramsey. (Doc. No. 26.)

After prevailing on the three claims, Plaintiff filed a Bill of Costs seeking reimbursement for litigation costs from Officers Ryan and Rahill in the amount of $4,483.38, which has since been reduced to $1,800.  (Doc. Nos. 39 and 51.)  On August 23, 2012, Plaintiff also filed as the prevailing party the instant Motion for an Award of Attorney's Fees and Interest pursuant to 42 U.S.C. § 1988 seeking fees totaling $66,572.92.  (Doc. No. 40.)  Defendants oppose the award of any fees.  (Doc. No. 41.)  These requests are now ripe for disposition.[6]

### III.   DISCUSSION

#### A.   Plaintiff's Counsel Is Not Entitled To Attorneys' Fees In This Case

Each party in a civil action usually is responsible for his own attorneys' fees.  "Congress has, however, authorized the award of attorney's fees to a prevailing party in the Civil Rights Attorney's Fees Awards Act . . . 42 U.S.C. § 1988(b) . . . ."  Truesdell v. Phila. Hous. Auth., 290 F.3d 159, 163 (3d Cir. 2002).   Section 1988(b) states: "In any action or proceeding to enforce a provision of sections . . . 1983 [or] 1985 . . . of this title, . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."

At issue in this case is whether Plaintiff is entitled to attorneys' fees after the jury awarded him only $1 in nominal damages.  The Third Circuit recently provided a comprehensive summary of controlling precedent on this issue in Velius v. Township of Hamilton, 466 F. App'x

---

[5] The Court dismissed the claim of intentional infliction of emotional distress (Count XII) against both officers at the close of Plaintiff's case.  (Doc. No. 41 at 3.)

[6] In deciding this motion, the Court has considered the following:  the Complaint (Doc. No. 1); Defendants' Pretrial Memorandum (Doc. No. 16); Plaintiff's Pretrial Memorandum (Doc. No. 17); Stipulation of Dismissal (Doc. No. 26); Judgment (Doc. No. 38); Bill of Costs (Doc. No. 39); Plaintiff's Motion for an Award of Attorney's Fees and Interest (Doc. No. 40); Defendants' Response in Opposition (Doc. No. 41); Plaintiff's Supplemental Memorandum (Doc. No. 51); and Defendants' Supplemental Memorandum in Opposition (Doc. No. 52).

133, 138-41 (3d Cir. 2012).  The analysis begins with the United States Supreme Court decision Farrar v. Hobby, 506 U.S. 103 (1992).

> In Farrar v. Hobby, a five-Justice majority of the Supreme Court held that civil rights plaintiffs who receive only nominal damages are prevailing parties under 42 U.S.C. § 1988.  The Court noted that the "technical nature" of a nominal damages award nevertheless "bear[s] on the propriety of fees awarded under § 1988."
> . . . .
>
> [T]he Court also opined that "[w]hen a plaintiff recovers only nominal damages . . . the only reasonable fee is *usually no fee at all*."

Velius, 466 F. App'x at 138 (citation omitted) (emphasis in original).  Justice O'Connor, although in agreement with the majority, wrote a concurring opinion "to clarify what factors might demonstrate the type of rare case in which nominal damages might not be 'de minimis,' such that attorneys' fees would be proper."  Id. at 139 (citation omitted).  She identified three factors to consider:  (1) "'a substantial difference between the judgment recovered and the recovery sought [would] suggest the victory is in fact purely technical'"; (2) "'the significance of the legal issue' on which the plaintiff prevailed"; and (3) whether the litigation "'accomplished some public goal.'"  Id. (citation omitted).

In Jama v. Esmor Correctional Services, Inc., 577 F.3d 169, 175-76 (3d Cir. 2009),  the Third Circuit adopted Justice O'Connor's considerations and set forth the following guidelines for determining whether an award of attorney's fees is appropriate in a nominal damages case.  First, "districts courts [have] substantial discretion to decide whether no fee or some fee would be reasonable, as long as they acknowledge that a nominal damages award is presumptively a technical victory that does not merit an award of attorneys' fees."  Velius, 466 F. App'x at 140-41.  Second, a court should look to "'[1] the difference between the relief sought and achieved, . .

. [2] the significance of the legal issue decided and [3] whether the litigation served a public purpose'" in deciding whether to award attorney's fees. Id. at 139 (citation omitted).

In Velius, these guidelines were applied. The plaintiff had been arrested by local police officers after he was seen driving unpredictably through a high school parking lot. 466 F. App'x at 135. Plaintiff claimed that the officers dragged him from his vehicle, causing an injury to his chest, and then handcuffed him too tightly, despite his complaints, which led to permanent wrist injuries. Id. Plaintiff brought a civil rights lawsuit against the two police officers for use of excessive force in violation of the Fourth Amendment. Id.

At trial, the officers told a different story about how plaintiff was injured. They claimed plaintiff exited the vehicle voluntarily, and while an officer was attempting to place him under arrest, both men fell to the ground accidently. Id. In the Velius case, the jury returned a verdict in favor of the plaintiff and against the officers on the Fourth Amendment claim. Id. Although the jury found that the officers had used excessive force, they also found that plaintiff had not suffered any injury, and therefore awarded him $1 in nominal damages. As the prevailing party, the plaintiff requested $82,600 in attorneys' fees under 42 U.S.C. § 1988. Id. The district court awarded $2,259 in fees, and the plaintiff appealed. Id.

Having found that the lower court did not properly apply the legal principles set forth in Farrar and Jama, the Third Circuit remanded the case with the following cautionary instructions:

> [T]he District Court should consider the fact that an "obtuse" verdict "cannot deter misconduct any more than a bolt of lightning can; . . . it teaches no valuable lesson because it carries no discernible meaning." The verdict sheet in this case does not demonstrate whether the jury's verdict was based on the Officers pulling [the plaintiff] from his truck, handcuffing him too tightly, or both. Thus, it cannot serve any substantial notice-giving function vis-à-vis the impropriety of tight handcuffing. We further caution that, given the Farrar rule that nominal damages awards in civil rights cases usually will warrant no fee and that every civil rights case in which the plaintiff prevails on the merits

8

>       vindicates some right, it cannot be the case that the mere vindication of
>       rights alone suffices to distinguish those cases in which the presumption
>       of no fee is overcome.

Id. at 141 n.4 (internal citation omitted).

On remand, the district court concluded that no fee was appropriate. Velius v. Twp. of Hamilton, No. 09-53, 2012 WL 2397938, at *2 (D.N.J. June 22, 2012) ("Plaintiff sought [$150,000] and recovered only $1. In light of Plaintiff's failed attempt to recover substantial monetary damages, this case is not the rare one in which the recovery of only nominal damages justifies the award of attorney's fees.") (internal citation omitted); see also Farrar, 506 U.S. at 114-15 (affirming the denial of attorneys' fees where the plaintiffs "received nominal damages instead of the $17 million in compensatory damages that they sought," noting that the "litigation accomplished little beyond giving [the plaintiffs] 'the moral satisfaction of knowing that a federal court concluded that [their] rights had been violated' in some unspecified way") (citation omitted).

In this case, it is undisputed that Plaintiff is a prevailing party for purposes of 42 U.S.C. § 1988. The jury's award of nominal damages, however, "is a presumptively technical victory that does not merit an award of attorneys' fees." See Velius, 466 F. App'x at 140-41.[7] For reasons that follow, like the plaintiffs in Farrar and Velius, Plaintiff has failed to overcome this presumption and an award of attorneys' fees is not warranted here.

---

[7] Plaintiff cites a recent Supreme Court case, Lefemine v. Wideman, 133 S. Ct. 9 (2012), suggesting that this standard has been relaxed. (See Doc. No. 51 at 7.) The Court disagrees. In Lefemine, the Supreme Court said that "[b]ecause [the plaintiff] is a 'prevailing party,' he 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" Lefemine, 133 S. Ct. at 11 (quoting Hensley v. Eckerhart, 461 U.S. 424, 429 (1983)). Lefemine is consistent with the Supreme Court's earlier decision in Farrar. When a jury awards nominal damages in a civil rights case, the award is a "special circumstance" which alters the fee analysis and creates a presumption against an award of attorney's fees.

First, the "difference between the relief sought and achieved" here is notably large and weighs against the award of attorneys' fees.  Plaintiff initially filed this lawsuit against four defendants:  the City of Philadelphia, Police Commissioner Ramsey, and Officers Ryan and Rahill.  The Complaint contained thirteen Counts alleging discriminatory police policies and practices based on race, use of excessive force, false arrest, and assault and battery, among other claims.  Plaintiff testified about unprovoked police brutality and sought declaratory and injunctive relief, along with compensatory and punitive damages in excess of $150,000 and $500,000, respectively.  By the time of trial, however, Plaintiff had withdrawn the claims against the City of Philadelphia and Police Commissioner Ramsey, thereby dropping all allegations of racial discrimination on a department-wide level.  Thereafter, despite making claims for compensatory and punitive damages of hundreds of thousands of dollars against Officers Ryan and Rahill, the jury awarded him only $1 in nominal damages, a considerable difference in amount under any analysis.

Second, although the jury's verdict in favor of Plaintiff on the Fourth Amendment claims was a vindication of his constitutional rights, "every civil rights case in which the plaintiff prevails on the merits vindicates some right, [and therefore] it cannot be the case that the mere vindication of rights alone suffices to distinguish those cases in which the presumption of no fee is overcome."  See Velius, 466 F. App'x at 141 n.4.  To overcome this obvious tenet, Plaintiff contends that his victory "is more than a mere vindication of his constitutional rights.  The significant constitutional issue in this case [is] whether the United States Supreme Court's decision in Florida v. J.L., 529 U.S. 266 (2000) should be applied in the Section 1983 context." (Doc. No. 51 at 7.)  The Court is not persuaded that this argument should result in the award of attorney's fees.

In J.L., Miami-Dade Police Officers received an anonymous call that a "young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun." 529 U.S. at 268. When the officers arrived at the bus stop, there were three black males, but only one, J.L., was wearing a plaid shirt. Id. Based solely on the anonymous tip and J.L.'s race, the officers proceeded to stop and frisk him. Id. A gun was seized from his pocket. Id. J.L. was charged with illegal possession of a firearm, but was eventually able to suppress the gun as fruit of an unlawful search. Id. at 269. The United States Supreme Court upheld the suppression of the gun, holding that "an anonymous tip lacking indicia of reliability [such as a credible informant or knowledge of a person's future movements] does not justify a stop and frisk whenever and however it alleges the illegal possession of a firearm." Id. at 274.

The holding in J.L. is inapposite to the facts of this case. Unlike J.L., the officers here claim to have received a radio call of a Hispanic male standing on the corner with a knife to his own throat. The officers were responding to an emergency situation, not simply an anonymous tip of potential criminal conduct.

Moreover, the jury's verdict in favor of Plaintiff, like the defendant's suppression of evidence in J.L., merely signifies that "'[his] rights had been violated.'" See Farrar, 506 U.S. at 114 (citation omitted). No other significant legal issue was decided here. Thus, Plaintiff's contention that the "significant constitutional issue" in this case is whether J.L. — a criminal case — "should be applied in the Section 1983 context" is not persuasive. (See Doc. No. 51 at 7.)

Finally, Plaintiff claims the verdict serves "an important public purpose" by "serv[ing] notice [to] the thousands of innocent minority men and women that are routinely stopped based upon so-called anonymous tips, that they can get relief in federal court." (Doc. No. 51 at 10.)

11

The Court disagrees. Like the facts of Velius, the jury's "'obtuse' verdict 'cannot deter misconduct any more than a bolt of lightning can; . . . it teaches no valuable lesson because it carries no discernible meaning' [and therefore] . . . . it cannot serve any substantial notice-giving function." See Velius, 466 F. App'x at 141 n.4 (citation omitted).

Plaintiff claims to have been waiting for the bus at the corner of 9th and Erie Streets, when Officers Ryan and Rahill struck him with the patrol car, tazed him, sprayed mace in his face, and beat him for no apparent reason. He allegedly suffered serious physical and emotional injuries as a result of their conduct. Plaintiff argues that, because he is a Hispanic male, the officers violated his Fourth Amendment and state law rights. The jury concluded that Officers Ryan and Rahill had "stopped him without reasonable suspicion" and that Officer Ryan "arrested him without probable cause," both "in violation of the Fourth Amendment." (See Doc. No. 35 at 1.)

The verdict slip is silent as to the cause of this unconstitutional seizure. To paraphrase Velius, was the Fourth Amendment violation due to race or to the mishandling of a discrete emergency situation? If the former, then Plaintiff contends the verdict served an important public purpose. The verdict sheet does not show, however, whether the verdict was due to race or to the mishandling of an emergency, and without such clarity the litigation does not advance the "'public purpose'" relied on by Plaintiff. See Velius, 466 F. App'x at 139 (citation omitted). Therefore, the Court will deny Plaintiff's Motion for an Award of Attorney's Fees and Interest.[8]

---

[8] Counsel for Plaintiff has provided the Court with a detailed breakdown of the $66,572.92 in attorneys' fees, as well as a thorough analysis to support the reasonableness of those fees. (See Doc. No. 40-1 at 6-26; Doc. No. 51 at 12-27.) However, because the Court will not award counsel any fees, the issue of reasonableness will not be addressed. See Farrar, 506 U.S. at 115 (a "court may lawfully award low fees or no fees without reciting the 12 factors bearing on reasonableness, or multiplying 'the number of hours reasonably expended . . . by a reasonable hourly rate'") (citation omitted); Velius, 466 F. App'x at 141 (same).

### B. Plaintiff Will Be Awarded Costs

Plaintiff also seeks $1,800 for costs incurred in this case. (Doc. No. 51 at 28.) 28 U.S.C. § 1920 permits the Court to tax as costs certain items incurred in litigation, such as "fees and disbursements for printing and witnesses." Federal Rule of Civil Procedure 54(d)(1) provides that "costs . . . should be allowed to the prevailing party." Taken together, "§ 1920 provides that a fee may be taxed as a cost, and Rule 54(d) provides that the cost shall be taxed against the losing party unless the court otherwise directs." Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441 (1987); see also Becker v. ARCO Chem. Co., 15 F. Supp. 2d 621, 635 (E.D. Pa. 1998) ("Successful civil rights litigants are entitled to reimbursement of 'costs' connected with litigating their claim as long as the costs are reasonably and necessarily incurred.") (citation omitted).

Here, Plaintiff is the prevailing party in a civil rights action. He has filed a timely Bill of Costs, and the amount Plaintiff is seeking is unopposed.[9] Therefore, the Court will award Plaintiff $1,800 in costs.

### IV. CONCLUSION

Based on the foregoing reasons, the Court will deny Plaintiff's Motion for an Award of Attorney's Fees and Interest. The Court will award Plaintiff $1,800 in costs. An appropriate Order follows.

---

[9] Initially, Plaintiff filed a Bill of Costs seeking reimbursement of $4,483.38. (Doc. No. 39.) Defendants opposed this amount due to the $2,500 Plaintiff sought in expert witness fees. (Doc. No. 41 at 13-14.) Defendants argued that the costs should be reduced to $1,983.38. (Id. at 14.) In his supplemental brief, Plaintiff modified the request and he is now seeking $1,800 in costs. (Doc. No. 51 at 28.) Defendants do not address this amount in their supplemental filing. (See Doc. No. 52.) However, since Defendants did not object to an award of $1,983.38, the Court will consider Plaintiff's request for $1,800 as unopposed. Therefore, the Court will award Plaintiff $1,800 in costs.